1997 ME 150

**Julie A. MELANSON**

v.

**Terrence L. BELYEA.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1997.
Decided July 16, 1997.

Edward S. David, Joyce, Dumas, David and Hanstein, P.A., Farmingon, for plaintiff.

David W. Austin, Rumford, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] Julie A. Melanson appeals from the judgment entered in the Superior Court (Oxford County, *Perkins,* J.) affirming the judgment entered in the District Court (Rumford, *Field,* J.) denying her motion to modify the child support provision in her divorce decree by extending the child support payments from Terrence L. Belyea to their children's 19th birthdays or high school graduations, whichever occur first. Melanson contends that the District Court erred by concluding that it had no statutory authority pursuant to 19 M.R.S.A. §§ 311–320, § 752(10) & (12) (Supp.1996) to so modify child support orders when the underlying divorce decree was entered prior to January 1990. We agree and vacate the judgment.

## I.

[¶ 2] The underlying facts are not in dispute. Melanson and Belyea were parties to an uncontested divorce entered in April 1982. Pursuant to the judgment Belyea was ordered to pay support to Melanson, the custodial parent, of $35 per week per child for their daughters Tammy and Samantha, who were five and two years old respectively at the time of the divorce. The judgment did not address the duration of the support payments.

[¶ 3] In June 1995 Melanson sought to amend the judgment, asking for both an increase in child support and the extension of payments for her daughters Tammy and Samantha until their high school graduations. Tammy was 18 years of age on June 3, 1995, and still had a year to complete before graduating from high school. Samantha also will be 18 years of age before finishing her senior year of high school in June 1998. In November 1995 the court ordered an increase to $112 per week in accord with the Child Support Guidelines. The court decided, however, that it had no authority to order support for either child beyond the age of 18, even though the children would still be attending high school, because the divorce judgment was entered prior to January 1, 1990. The court found that neither the plain language of what it deemed the relevant statutory provisions nor the legislative history indicate that a court may so modify a divorce judgment of that vintage. The Superior Court affirmed the judgment.

## II.

[¶ 4] When the Superior Court acts as an intermediate appellate court, we review directly the decision of the District Court. *Casco N. Bank, N.A. v. Estate of Grosse,* 657 A.2d 778, 780 (Me.1995). We review a trial court's interpretation of a statute for errors of law. *Daniels v. Tew Mac Aero Servs.,*

*Inc.,* 675 A.2d 984, 987 (Me.1996). We first examine the plain meaning of the statutory language, seeking to give effect to the legislative intent, *id.,* and construe that language to avoid absurd, inconsistent, unreasonable or illogical results. *Thibeault v. Larson,* 666 A.2d 112, 114 (Me.1995); *Mahaney v. State,* 610 A.2d 738, 741 (Me.1992) ("Such interpretation of the words used will be adopted as shall appear most reasonable and best suited to accomplish the objects of the statute."). Thus, we consider the whole statutory scheme of which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved. *Daniels,* 675 A.2d at 987. Only when the statutory language is ambiguous will we look beyond its plain meaning and examine other indicia of legislative intent, including legislative history. *Berube v. Rust Eng'g,* 668 A.2d 875, 876 (Me.1995).

[¶ 5] The statutory provision on which the court focused primarily[1] was amended during the First Regular Session of the 114th Legislature to read in pertinent part:

> **10. Support order** .... For divorces ordered after January 1, 1990, the order for child support *may* run until the child graduates, withdraws or is expelled from secondary school ... or attains the age of 19 years, whichever first occurs after the child attains the age of 18 years....

19 M.R.S.A. § 752 (P.L.1989, ch. 156, § 7 (effective Sept. 30, 1989))(emphasis added). This language authorized the courts to extend child support until a child's high school graduation or 19th birthday, whichever comes first, only when ordering child support pursuant to divorce decrees entered after January 1, 1990. Neither section 752(10) nor any other provision enacted by chapter 156 addressed the court's authority to so extend child support when modifying orders con-

---

1. The court also relied on 19 M.R.S.A. § 752(12), which states in pertinent part:

   **12. Modification of orders; compulsory process** .... Child support orders may be modified retroactively, but only from the date that notice of a petition for modification has been served upon the opposing party pursuant to the Maine Rules of Civil Procedure....

   This section, however, does not address whether a divorce judgment entered prior to January 1, 1990 may be modified to provide for continuing child support. It simply ensures that any modifications ordered may apply from the date of the notice of the claim for modification so as not to reward any delay in the opposing party's response to the claim.

tained in pre–1990 divorce judgments.[2]

[¶ 6] That oversight was corrected during the 114th Legislature's Second Regular Session, when it codified the Child Support Guidelines that previously had been adopted by court rule. 19 M.R.S.A. §§ 311–320 (P.L. 1989, ch. 834 (effective Apr. 17, 1990)). The law's emergency preamble asserts that its enactment was in response to (1) a federal requirement that states adopt child support guidelines to maintain their eligibility for Aid to Families with Dependent Children funds, (2) fears that Maine's Guidelines might not survive constitutional challenges unless codified, and (3) a recognition that "existing statutory provisions conflict with the [C]hild [S]upport [G]uidelines." P.L.1989, ch. 834. Thus, the Guidelines provide that, *"[n]otwithstanding any other provisions of law,* this subchapter applies to *any court action* or administrative proceeding in which a child support order is issued or *modified* under this Title or Title 22.[3]" 19 M.R.S.A. § 312(emphases added). In particular, section 752(10) was amended to read: "A determination *or modification* of child support under this section must comply with chapter 7, subchapter I–A [19 M.R.S.A. §§ 311–320]." P.L.1989, ch. 834, § B–11 (emphasis added). Although the Legislature chose not to delete the language in section 752(10) that provides for extensions of child support pursuant to

post-January 1990 divorces, nothing in that language negates the amendments just quoted to the extent they pertain to modifications of existing support orders.

[¶ 7] Pursuant to the Child Support Guidelines, support orders must be calculated with reference to the tables and age categories of children and the income of the parties as defined by statute. 19 M.R.S.A. § 316(1). The relevant definitional section requires that support be ordered for children who are below age 19 but still attending secondary school:

**Twelve through 17 years; between the ages of 12 and 18 years.** The age categories "12 through 17 years" and "between the ages of 12 and 18 years" as used in the child support table and elsewhere in the support guidelines are deemed to include children between the ages of 18 and 19 years who are attending a secondary school for whom an obligation of support is established or deemed to remain in force pursuant to Public Law 1989, chapter 156.

19 M.R.S.A. § 311(11). The Guidelines therefore dictate that child support obligations terminate once a child reaches the age of 18, unless that child continues to attend high school. If the child's parents are divorced after January 1, 1990,[4] the court

**2.** We note, however, that the relevant legislative statement of fact provides that "[t]his amendment is intended to help those high school students who reach the age of 18 before graduation by extending parental support *in all situations ...*" and concludes that "[t]hese changes will apply only to divorce and *other court orders* or administrative orders issued after January 1, 1990." Comm. Amend. A to L.D. 156, No. H–139 (114th Legis.1989) (emphases added). Although "other court orders" could be read to include modifications of child support orders included in divorce judgments entered prior to January 1, 1990, this legislative statement of fact is at odds with the plain language of the statute as it stood prior to the codification of the Child Support Guidelines during the 114th Legislature's Second Regular Session.

**3.** Title 22 includes 22 M.R.S.A. § 3754 (1992 & Supp.1996), which addresses parental support obligations in the context of the Aid to Dependent Children program.

**4.** The pre- and post–January 1, 1990 distinction continues to apply due to section 752(10)'s provision "[f]or divorces ordered after January 1,

1990 ...," which was added by Public Law 1989, chapter 156 (to which section 311(11) refers explicitly). That provision of section 752(10) was not deleted when the Child Support Guidelines were enacted by Public Law 1989, chapter 834. The Legislature may have established the January 1, 1990 threshold for the application of the provisions allowing such extensions of child support because it wanted to avoid retroactively amending all divorce judgments without notice and a hearing, thereby potentially creating additional obligations for past support due with respect to children who had been high school students after turning 18, but who turned 19 prior to 1990.

In any event, the recodification to take effect October 1, 1997 maintains the distinction. See 19–A M.R.S.A. § 1653(8)(B) (Supp.1996) ("After January 1, 1990, if the court orders either parent to provide child support, the court order must require that the child support be provided beyond the child's 18th birthday if the child is attending secondary school ... until the child graduates, withdraws or is expelled from secondary school or attains the age of 19, whichever occurs first."); § 1653(12)(A) ("For orders is-

must establish a support obligation that continues until the child reaches the age of 19 or graduates from high school, whichever occurs first. If the child's parents were divorced prior to January 1990, and a support order is already in place, the Guidelines do not automatically modify that support order to provide for the extended period of payment. Instead, the custodial parent must file a motion seeking a modification of the support order for that purpose. Unless the relevant circumstances justify a deviation from the Guidelines, *see* 19 M.R.S.A. § 316(4) (subsections addressing "special circumstances"), the court must modify the order of support to extend the obligation through the child's 19th birthday or high school graduation.

[¶ 8] Although we conclude that the statutory language, properly analyzed, is clear, we acknowledge that the statutory scheme's complexity may create some ambiguity. We therefore note that the Statement of Fact accompanying the legislation to enact the Child Support Guidelines states that the bill's purpose was to amend "current law to mandate the usage of the [C]hild [S]upport [G]uidelines in *any action* under the Maine Revised Statutes, Title 19 and Title 22, to determine *or modify* child support." L.D. 2353 (114th Legis.1989) (emphases added).

[¶ 9] Our interpretation of the relevant statutory provisions also effectuates the legislative intent in a manner that is "mindful of the whole statutory scheme ... so that a harmonious result may be achieved," *Daniels*, 675 A.2d at 987, and it avoids "absurd, inconsistent, unreasonable, or illogical results." *Thibeault*, 666 A.2d at 114; *Mahaney*, 610 A.2d at 741. It would be illogical and unreasonable to establish a statutory scheme that authorizes extensions of child support for some 19–year–olds and not others based on the vintage of their parents' divorces.[5] It would be inconsistent to disallow such extensions when a child support order arises out of a pre–1990 divorce, given the availability of extensions in situations in which the date of divorce is irrelevant. For example, the statutory provision for child support orders issued pursuant to agency proceedings draws no distinction based on the date of an underlying divorce decree, and requires only that the child support order in question-including "any judgment or order for the support of dependent children issued by any court of the State of Maine," 19 M.R.S.A. § 493(2)-have been issued since January 1, 1990. *See* 19 M.R.S.A. § 493(4)(1981 & Supp.1996).[6] Moreover, when a child's parents have never been married, and therefore can never have been divorced, the statutory scheme provides simply that

[a]fter January 1, 1990, the court may order either parent to provide child support beyond the child's 18th birthday if the child is attending secondary school ..., until the child graduates, withdraws or is expelled from secondary school or attains the age of 19, whichever first occurs.

19 M.R.S.A. § 214(9) (Supp.1996).

[¶ 10] In summary, we conclude that the courts, in response to a motion for a modification, have the authority to modify divorce judgments entered prior to January 1990 to provide support payments until a child's 19th birthday or high school graduation, whichever occurs first, in compliance with the Child Support Guidelines. Absent

---

sued after January 1, 1990, if the child attains 18 years of age while attending secondary school ... the order remains in force until the child graduates, withdraws or is expelled from secondary school or attains 19 years of age, whichever occurs first....").

**5.** Accordingly, Melanson argues that such statutory provisions would be facially discriminatory pursuant to the equal protection clauses of the U.S. and Maine constitutions. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6–A. In view of our reading of the statute we do not address this contention.

**6.** The statute states in pertinent part:

...[I]f a person for whom child support has been established by a court order of support ... attains the age of 18 years while attending secondary school ... a support debt may be established under this subchapter [Subchapter V, Alternative Method of Support Enforcement] with respect to child support accruing between that person's 18th birthday and that person's graduation, withdrawal or expulsion from secondary school or 19th birthday, whichever first occurs, if the court order of support has been issued after January 1, 1990.
19 M.R.S.A. § 493(4).

some justification for a deviation, the Guidelines require the extension of child support until the age of 19 for those children still attending secondary school.[7]

The entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment vacating the judgment of the District Court and remanding to the District Court for further proceedings consistent with this opinion.

CLIFFORD, J., with whom DANA, J. joins, dissenting.

[¶ 11] The language of 19 M.R.S.A. § 752(10) (Supp.1996) is clear on its face, limiting its application to "divorces ordered after January 1, 1990." The Court, however, concludes that the meaning of this phrase has been altered or nullified by the subsequent codification to the Child Support Guidelines. In my view, this conclusion is not supported by the statutory language, is speculative, and is at odds with principles of statutory construction. Accordingly, I respectfully dissent.

[¶ 12] When we interpret a statute, our only goal is to determine the expressed intention of the Legislature. As a first step in that exercise, we examine, as we must, the language that the Legislature used in order to ascertain the meaning of the statute. We have said that

> [t]he Legislative intent in a statute must primarily be ascertained from the language thereof and not from conjecture. In other words, the Court will first seek to find the Legislative intention from words, phrases and sentences which make up the subject matter of the statute. If the meaning of the language is plain the Court will look no further; it is interpreted to mean exactly what it says.

*Sweeney v. Dahl*, 140 Me. 133, 140, 34 A.2d 673, 676 (1943) (citation omitted). We have repeated that admonition consistently over time.[8] We can give effect to statutes "only to the extent, to which they may be made operative by a fair and liberal construction of the language used. [Our] province [is not] to supply defective enactments by an attempt to carry out fully the purposes, which may be supposed to have occasioned those enactments. This would be but an assumption by the judicial of the duties of the legislative department." *Swift v. Luce*, 27 Me. 285, 286 (1847).

[¶ 13] The express language of section 752(10) authorizes the court to extend child support until a child's high school graduation or until the child is nineteen *for divorce decrees ordered after January 1, 1990*. That language clearly limits the authority of the court to extend child support in pre–1990 divorces. The Legislature *could* have added language to section 752(10) to grant authority to the courts to extend the support when the divorce occurred before January 1, 1990, but it did not do so. Because the divorce that was the subject of this appeal occurred prior to January 1, 1990, the trial court correctly concluded that it had no authority to extend the child support obligations.

---

**7.** 19 M.R.S.A. § 752, the only provision that the court read as limiting a court's authority to extend child support for those children still attending secondary school until their 19th birthdays to post–1990 divorces, is repealed as of October 1, 1997 pursuant to P.L.1995, ch. 694, § B–1. As noted, *supra*, that enactment states in pertinent part:

> After January 1, 1990, if the court orders either parent to provide child support, the court order must require that the child support be provided beyond the child's 18th birthday if the child is attending secondary school ... until the child graduates, withdraws or is expelled from secondary school or attains the age of 19, whichever occurs first.

19–A M.R.S.A. § 1653(8)(B) (Supp.1996). Thus, as of this October the issue decided in this appeal will be moot.

**8.** *See City of Lewiston v. Tri–State Rubbish, Inc.*, 671 A.2d 955, 956 (Me.1996) ("The first source of legislative intent is the language of the statute itself [, and we] 'will not look beyond clear and unambiguous statutory language.'") (citation omitted); *State v. Millett*, 392 A.2d 521, 525 (Me.1978) ("we must not lose sight of the overall principle that, where the language of a statute i[s] plain and unambiguous, there is no occasion for resorting to the rules of statutory interpretation") (citation omitted); *Chase v. Edgar*, 259 A.2d 30, 32 (Me.1969) ("Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation, and the court has no right to look for or impose another meaning.") (citation omitted).

Extending the court's authority to alter pre–1990 divorce decrees in this way should require language as clear as the originally enacted language limiting that authority. The Court suggests that it is an "oversight" that section 752(10) does not apply to pre–1990 divorces, and that the "oversight" was corrected when the Legislature subsequently codified the Child Support Guidelines. See 19 M.R.S.A. §§ 311–320 (Supp.1996)(enacted by P.L.1989, ch. 834 (effective Apr. 17, 1990)). I disagree for two reasons. First, by P.L.1989, ch. 834, the Legislature not only codified the Child Support Guidelines, it also amended section 752(10) to note that a "determination or modification of child support under this section must comply with chapter 7, subchapter I–A [The Child Support Guidelines]." It chose, however, *not* to delete the clearly limiting language present in section 752(10). Second, the Child Support Guidelines provides a definition for age categories for children "for whom an obligation of support is established or deemed to remain in force pursuant to Public Law 1989,Chapter 156." 19 M.R.S.A. § 311(11) (Supp.1996). Thus, section 311(11) expressly refers to the statute imposing the date restriction of January 1,1990. Section 311(11) gives the court no new authority because it incorporates that date restriction in section 752(10). Accordingly, I disagree with the Court's conclusion that the codification of the Child Support Guidelines altered the clear meaning of section 752(10).

[¶ 15] The Court goes on to conclude that if the child's parents are divorced after January 1, 1990, the court must follow the new guidelines, but that "[i]f the child's parents were divorced prior to January 1990, and a support order is already in place … the custodial parent must file a motion seeking a modification of the support order for that purpose." In my view, this construction is strained. It is contrary to the clear language of section 752(10) and is not supported by any legislative debate or statement of fact. I would conclude that the Legislature has not altered the meaning of section 752(10)[9] and would affirm the judgment.

---

9. The Court suggests in footnote 4 that the "Legislature may have established the January 1, 1990 threshold for the application of provisions allowing such extensions of child support because it wanted to avoid retroactively amending all divorce judgments without notice and a hearing…." In my view, if the Legislature, after debate and thoughtful reflection, made that policy judgment, it would have said so when it codified the Child Support Guidelines.