1998 ME 272

**Henry BANKS et al.**

v.

**MAINE RSA # 1**

Supreme Judicial Court of Maine.

Argued Oct. 8, 1998.
Decided Dec. 21, 1998.
Reconsideration Granted in Part and
Amended Jan. 19, 1999.

E. Stephen Murray (orally), John B. Shumadine, Law Student, Murray, Plumb & Murray, Portland, for plaintiffs.

Richard L. Trafton (orally), Trafton & Matzen, Auburn, for defendant.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY,* ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Henry Banks and other residents of the Town of Denmark[1] appeal from the judgment entered in the Superior Court (Oxford County, *Perkins, A.R.J.*) affirming the decision of the Town of Denmark Zoning Board of Appeals which affirmed the Denmark Planning Board's grant of a conditional use permit to Maine RSA # 1, Inc. (RSA)[2] to construct a telecommunications tower and equipment shed on Pleasant Mountain in Denmark. Because we agree with the contention of the residents that the Planning Board committed an error of law when it granted the permit to construct a 190 foot tower despite a Denmark Zoning Ordinance provision limiting the height of structures to thirty-five feet, we vacate the judgment.

[¶ 2] In April of 1997, RSA submitted an application for a permit to the Planning Board, proposing to construct a 300 foot telecommunications tower and an accompanying equipment shed 1900 feet above sea level on Pleasant Mountain.[3] After several public hearings before the Planning Board, during which the Planning Board determined that RSA's application was incomplete, RSA submitted a final revised application. RSA's Consolidated and Amended Application for a conditional use permit, dated June 26, 1997, lists the proposed structures as "one (1) 190' guyed tower, with antennae, without hazard lighting or warning paint and one (1) 12' X

24' one (1) story equipment building, surrounded by a chain link security fence."[4] The tower is mounted on a reinforced concrete foundation which is pinned to bedrock, is supported by guide wires anchored to the ground in three locations, and is connected to the proposed utility building by transmission cables. The tower is designed to support antennae that receive and transmit radio waves for cellular telephone calls. The radio waves are processed by equipment located in the equipment shed.

[¶ 3] In July of 1997, after determining that RSA's application was complete, the Planning Board approved RSA's application for a conditional use permit. The written decision of the Planning Board granting RSA the conditional use permit does not address the thirty-five foot height restriction contained in the Zoning Ordinance, nor does it mention the Federal Telecommunications Act. The residents appealed the Planning Board's grant of the permit to the town Zoning Board of Appeals. The Chairman of the Planning Board told the Board of Appeals that "the Planning Board decided the proposed tower [was] not a structure and [was] not limited to the thirty-five foot height restriction...." The record, however, does not reflect any discussion of the height restriction by the Planning Board in making its decision. The Board of Appeals affirmed the grant of the permit to RSA, concluding that "the Planning Board did not err in its decision that section 4.1.E does not apply, because common sense dictates that utility towers would have to be more than thirty-five feet high in many instances." The residents appealed that decision to the Superior Court pursuant to M.R. Civ. P. 80B. The Superior Court affirmed the grant of the permit and the residents filed this appeal.

---

* Saufley, J., sat at oral argument and participated in the initial conference but participated no further.

1. The appellants in this case are a group of individuals who reside in Denmark in the proximity of the proposed site or in view of the proposed site.

2. Maine RSA # 1, Inc. is associated with United States Cellular.

3. Pleasant Mountain is designated by the Town of Denmark as a "general purpose" land use district. According to the town Zoning Ordinance, commercial structures and uses in general purpose districts require a conditional use permit from the town Planning Board.

4. RSA engineers found an error in their calculations that enabled RSA to reduce the proposed tower height from 300 feet to 190 feet.

[¶ 4] Because the Board of Appeals and the Superior Court reviewed this matter in their appellate capacity, "we review directly the planning board's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Fitanides v. City of Saco,* 684 A.2d 421, 422 (Me.1996) (citing *Enos v. Town of Stetson,* 665 A.2d 678, 680 (Me.1995)). The meaning of a term contained within an ordinance is a question of law, subject to *de novo* review. *See Gerald v. Town of York,* 589 A.2d 1272, 1274 (Me.1991). A court must interpret an ordinance "by first looking at the plain meaning of the language to give effect to legislative intent." *Clarke v. Olsten Certified Healthcare Corp.,* 1998 ME 180, ¶ 6, 714 A.2d 823. In doing so, "[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald,* 589 A.2d at 1274; *see also Cumberland Farms, Inc. v. Town of Scarborough,* 1997 ME 11, ¶ 6, 688 A.2d 914 ("Individual provisions must be interpreted in harmony with the overall scheme of a zoning ordinance...."). A court's interpretation of an ordinance must not create "absurd, inconsistent, unreasonable or illogical results." *Melanson v. Belyea,* 1997 ME 150, ¶ 4, 698 A.2d 492.

[¶ 5] Section 4.1.E of the Zoning Ordinance provides, "No *structure* shall exceed 35 feet in height. *Features* of buildings and structures, such as chimneys, towers, ventilators, and spires may exceed 35 feet in height ...." Denmark, Me., Zoning Ordinance § 4.1.E (1994) (emphasis added). The residents contend that the proposed tower is a "structure" separate from the equipment shed and thus in violation of the height restriction; RSA contends that the proposed tower is a "feature" of the connected equipment shed and/or a "feature" of the concrete foundation, not subject to the height restriction.

[¶ 6] Section 3.2 of the Zoning Ordinance defines "building" as "a structure for the support, shelter or enclosure of persons, animals, goods or property of any kind." Denmark, Me., Zoning Ordinance § 3.2 (1994). This section further defines "structure" as "anything constructed or erected, except a boundary wall or fence, the use of which requires location on the ground or attachment to something on the ground." *Id.* The equipment shed falls within the definition of "building." We conclude that the proposed tower falls within the Zoning Ordinance's definition of "structure."

[¶ 7] Contrary to RSA's contention, the proposed tower does not constitute a "feature" for purposes of section 4.1.E. Section 3.2 of the Zoning Ordinance states that "[t]erms not defined shall have the customary dictionary meaning." *Id.* "Feature" is not specifically defined by the Zoning Ordinance. Although the section of the ordinance pertaining to the height restriction does list a "tower" as an example of a "feature," Denmark, Me., Zoning Ordinance § 4.1.E, "tower" must be read in the context of the list of features included in the statute. A basic tenet of statutory construction provides that "a general term followed by a list of illustrations is ordinarily assumed to embrace only concepts similar to those illustrations." *Penobscot Nation v. Stilphen,* 461 A.2d 478, 489 (Me.1983). "Tower" is placed on a list with "chimneys, ... ventilators, and spires[,]" all of which contemplate a strong physical attachment to a structure. To be consistent with the other items on the list, the term "tower" must refer to towers attached to other structures and not free standing towers.

[¶ 8] The tower proposed by RSA is significantly different from a chimney, ventilator or spire in that it stands attached to a concrete foundation and is anchored directly to the ground at three separate locations. The tower is the structure. It is not ancillary to something else and would remain standing absent the equipment shed. The tower is connected to the equipment shed through cables which serve to transfer data collected by the tower to the equipment located in the equipment shed for processing. That connection is *functional* rather than *structural.* For purposes of section 4.1.E, RSA's proposed tower clearly fits within the definition of "structure." It cannot be described as a "feature."

[¶ 9] RSA contends that both the equipment shed and the tower are integral elements of the overall telecommunications structure, and thus "features."[5] According to RSA, the tower is useless without the equipment shed and the equipment shed is useless without the tower. This overly broad interpretation of the ordinance, however, would render the height restriction virtually meaningless. Following this construction, a skyscraper built simultaneously with shorter buildings would constitute a "feature" of the overall construction project. Such an interpretation would create an illogical result. *See Melanson,* 1997 ME 150, ¶ 4, 698 A.2d 492. If the town wishes to allow the construction of utility towers in excess of thirty-five feet in height, it can change the language of its ordinance.

[¶ 10] That the Zoning Ordinance's height restriction prohibits the Planning Board from granting the conditional use permit, however, necessarily implicates the Federal Telecommunications Act.[6] The Telecommunications Act provides that state and local governments have the authority to regulate the "placement, construction, and modification of personal wireless service facilities" as long as such regulation does not *"prohibit or have the effect of prohibiting the provision of personal wireless services."* 47 U.S.C. § 332(c)(7)(A), (B)(i)(II) (Supp.1998) (emphasis added). The Planning Board did not address the issue, and the present record does not contain sufficient information concerning whether application of the height restriction to RSA's proposed tower would "prohibit or have the effect or prohibiting the provision of personal wireless services." Accordingly, the issue can be addressed by the Board on remand.[7]

The entry is:

Judgment of the Superior Court is vacated. Remanded for remand to the Zoning Board of Appeals for remand to the Planning Board for further proceedings consistent with this opinion.

1998 ME 275

## FLEET BANK OF MAINE

v.

## Gregory A. HARRIMAN et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 20, 1998.
Decided Dec. 23, 1998.

5. In support of its position, RSA cites our opinion in *Town of Union v. Strong* holding that a deck joined to a house is an integral part of the "principal structure." *See* 681 A.2d 14, 17 (Me. 1996). In *Strong,* we were interpreting a town ordinance which distinguished between a "principal structure" and an "accessory structure" for purposes of set back requirements. *See id.* at 16–17. The *Strong* decision offers little support for RSA's position.

6. The record contains some discussion of alternative sites for the proposed tower, but little to indicate whether an alternate design is possible. Although the Federal Telecommunications Act is not mentioned in the Planning Board's decision, it was raised by RSA before the Board.

7. The residents also contend that the permit was improperly issued because the Board failed to consider provisions of the Denmark ordinance requiring that RSA's application for a permit specify how the tower is to be accessed, and that the application and the evidence presented were inadequate in that regard. Because we vacate the Board's decision on the issue of the height of

Michael S. Haenn, Bangor, for plaintiff.

Gregory A. Harriman, Kathryn P. Harriman, Troy, for defendants.

Jay P. McCloskey, United States Attorney, Frederick C. Emery, Jr ., Asst. U.S. Atty., Portland, for party-in-interest.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

---

the tower, we do not address the access road issue. Access to the tower is an issue, in addition to the Federal Telecommunications Act, that should be addressed by the Planning Board on remand.